IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUTH MUTAHI | ) |
|           Plaintiff, | ) Civil Action No. 13-1096 |
| v. | ) Judge David S. Cercone |
| | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| Department of Human Services, | ) |
| Allegheny County Office of Children | ) |
| Youth and Family, Allegheny County, | ) |
| Jessie Schemm, and Sharon Hanlon | ) |
|           Defendants. | ) |

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS (ECF No. 5)**

**I. RECOMMENDATION**

For the reasons set forth below, it is respectfully recommended that the Defendants' October 3, 2013 Motion to Dismiss (ECF No. 5) be granted on jurisdictional grounds. Plaintiff's *pro se* Complaint sets forth causes of action which, on its face, are clearly jurisdictionally barred under Rooker-Feldman and/or from which this Court should abstain in accordance with the Younger doctrine. Further, any opportunity to amend would be futile, given the facts of record, and the bases of liability asserted in Plaintiff's Complaint.

**II. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Ruth Mutahi ("Mutahi") has objected to the conduct of and determinations made by the Allegheny County Office of Children Youth and Family (hereafter "Allegheny CYF"), its

1

employees, and the Allegheny County Court of Common Pleas in proceedings related to the custody of her minor son.

Plaintiff was granted *in forma pauperis* ("IFP") status on July 31, 2013 and her Complaint in this action was filed that day (ECF No. 2). Mutahi complains that her minor son was placed in the custody of Allegheny CYF – on allegations of child abuse - in November, 2012[1] and that she met with Defendant Schemm the next day, "did not request housing or financial assistance", but entered into a December 19, 2012 "contract" with Allegheny CYF which was a "family reunification plan" under which she was to be provided with housing and reunified with her son by June 19, 2013.[2] The record of the Allegheny County Court indicates that Petition for Dependency hearings were convened, with Plaintiff present, on January 2, January 15 (at which point the Order also notes that Plaintiff was to "receive supervised visits"), and January 23 but were repeatedly continued – first for Petitioner to obtain counsel, then for the child to be present, and then to locate the father (who is in Kenya). Plaintiff did not appear for the February 12th Petition hearing and it was again continued for her to be present. Plaintiff did

---

[1] The record of the Allegheny Court of Common Pleas Juvenile Division reflects an Application for Emergency Protective Custody on November 26, 2012 when the child was taken by paramedics to Children's Hospital, and a Recommendation for shelter care and "no contact" with mother Order dated November 30, 2012.

[2] Although the Complaint refers to attachment of this contract as "Exhibit A", there is no such attachment. Nor is there any other record indication of any such agreement. The "Actions Needed for Permanency Goal" documents contained the Allegheny Court records indicate only that Plaintiff was to "participate in any and all recommended services" and to "maintain housing that is safe for [her son] to return home". Plaintiff was also to notify her caseworker within 24 hours of any changes in address, telephone number or employment. Cf. discussion, *infra*.

not appear for the February 21, 2013 hearing, but was represented by her then-counsel, David Sheldon.[3]

Correspondence of record to Plaintiff from the Juvenile Court Project dated March 11, 2013 indicates that Plaintiff's designated Parent Advocate was unable to reach her/had no current contact information and she was not present for this hearing; medical and educational rights were assigned to the foster caregiver, Ms. Washington; and the Permanency Review Hearing was scheduled for May 22, 2013 at which time the Court would assess progress made toward reunification. The actual Court of Common Pleas records reflect an Order of Adjudication and Dispostion dated February 21, 2013 (*i.e.*, several months prior to the filing of this action) finding Plaintiff's son to be "by clear and convincing evidence" a "dependent child" and ordering his transfer to foster care. The record also indicates that on March 27, 2013, Plaintiff's Juvenile Court Project Parent Advocate, David Sheldon, filed a Motion to Withdraw, advising the Court that although she was accepted as a client on January 2, Plaintiff subsequently informed her Parent Advocate that she did not wish to be represented and notification was provided to her last known address. Plaintiff asserts that on March 27 she "sought protection and refuge" at a homeless shelter for women in Washington, D.C. Plaintiff did not appear for any interim hearings, and by Order of May 23, 2013, the Court of Common Pleas find that she had made "no compliance with the permanency plan" for reunification, that "reasonable efforts [had] been made by the Allegheny County Office of Children, Youth and Families", and that Plaintiff had made "no progress toward alleviating the circumstances which necessitated the original

---

[3] Plaintiff alleges, obliquely and without further explanation or factual basis, that Allegheny CYF "terminated plaintiff's employment" in early February. Cf. Mutahi v. Catholic Charities Dioscese of Pittsburgh, Civ. Action No. 13-0304 (Plaintiff's recent, dismissed, action before this Court, against a former employer).

3

placement"; accordingly, her minor son was to remain in foster care. Plaintiff attests that on June 7 she was arrested for failure to appear for a trial conference and that she was acquitted of charges regarding care of her minor son on July 26, 2013. The record of the Court of Common Please reflects a Permanency Review Order dated August 20, 2013 determining that Plaintiff was residing in D.C. and had no visits, that there was no progress toward alleviating the original relevant circumstances, that the child was doing well and was in agreement with placement, that the child would remain in foster care with visitations by Plaintiff if requested, and that the goal remained ultimate return to Plaintiff.

Plaintiff complains that she was not provided housing or reunited with her minor son and that he was placed in foster care, and rights for his care transferred, without her participation. She asserts causes of liability based on breach of contract ("To date Plaintiff continues to live in shelter because Defendant has failed in providing the promised housing and the child continues to live in foster care."); negligence ("Any reasonable person would have foreseen that to harass plaintiff out of her home prior to obtaining alternative housing would have resulted to homelessness and inability to reunify parent and child."); multiple violations of her civil rights under 42 U.S.C. Section 981 because she was "denied a right to be a party and to give evidence" in proceedings that resulted in changes to custody and legal rights as to her minor son; two violations of her rights under 42 Pa.C.S. Section 6301 *et seq.* on similar grounds and because placement of her son in foster care was contrary to the statutory requirement that separation "occur only when necessary for the child's welfare, safety or health"; and three violations of her rights under 11 P.S. 2633 based on her son's placement with a non-relative, in an environment that does not "maintain and reflect" his culture, and without visitation. The relief sought includes damages and the "release of [her son] from [the State Court ordered] placement".

4

Defendants filed a Motion to Dismiss the Complaint on October 3, 2013 (ECF No. 5) to which Plaintiff's response was due by October 25th. On October 16th, Plaintiff filed a Motion to Amend her Complaint. By text Order of December 30, 2013, this Court denied that Motion without prejudice, explaining to the *pro se* Plaintiff that the proposed amendments to her Complaint did "not address the issues raised in the Motion" to Dismiss, and granting her *sua sponte* an extension to January 31, 2014 to file a response to the Motion to Dismiss. Plaintiff has failed to file a response or any other pleading since October 16th.

### III. STANDARD OF REVIEW

A Motion to Dismiss is an appropriate means of challenging the legal sufficiency of the Complaint. See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It is to be granted where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). In Iqbal, the Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Shortly therafter, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard as requiring that civil complaints set out "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210 (quoting Iqbal). And it set forth the following two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

In assessing a Motion to Dismiss, the Court may consider not only the factual allegations that appear on the face of the Complaint, but also documents attached to or submitted with the Complaint, or incorporated into the Complaint by reference, as well as certain other evidence outside the Complaint/other authentic items/items of public record.[4] The Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (2). More particularly, the docket and documents in child custody cases are public records of which this Court can take judicial notice. *See, e.g.,* Lepre v. Lukus, 2014 WL 198811, *5 (M.D. Pa. 2014) (citing Wilson v. McVey, 579 F, Supp.2d 685, 688 (M.D. Pa. 2008) (taking

---

[4] See generally, Pryor v. Nat'l Collegiate Athletic Ass'n., 228 F.3d 548, 560 (3d Cir. 2002). See also State College Area School Dist. v. Royal Bank of Canada, 825 F.Supp.2d 573, 577-578 (M.D. Pa. 2011) (quoting Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)).

6

judicial notice of court docket); S. Cross Overseas Agencies, Inc. v. Won Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). The Court also observes that *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations omitted); Haines v. Kerner, 404 U.S. 519 (1972).

**IV. ANALYSIS**

The Court largely concurs with the Defendants' analysis as to the existence of a Rooker-Feldman[5] jurisdictional bar, and the applicability of the Younger[6] abstention doctrine to this action. More specifically, as noted above, Plaintiff's claims arise essentially from child custody determinations made, and continuing to be made, during proceedings before the Allegheny County Court of Common Pleas. In addition, the Court observes that were any claims presently maintainable before this Federal Court – which the Court expressly concludes they are not – Eleventh Amendment immunity would apply to the institutional Defendants, and to the individual Defendants in their official capacities, as mentioned in the Brief in Support of Motion to Dismiss.[7] The Court however need not, and does not, rely on immunity in recommending that

---

[5] D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

[6] Younger v. Harris, 401 U.S. 37 (1971).

[7] See Brief in Support at 6-7. Cf. Sheils v. Bucks County Domestic Relations Section, 921 F.Supp.2d 396 (E.D.Pa. 2013) (citing Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010). Cf. also Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 488-89 (3d Cir. 1997) (deeming "child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state . . . absolute[ly] immun[e] from suit for all of their actions in preparing for and prosecuting such dependency proceedings"); id. at 497 (noting immunity was broad enough "to include the formulation and presentation of recommendations to the court in the course of such proceedings").

7

the Motion be granted. Finally, as to any implied or intended individual capacity claims, it observes that the factual assertions are insufficient and the record suggests absolutely no plausible grounds for liability on the part of any individual Defendant.

### A. Rooker-Feldman Jurisdictional Bar

"[T]he fundamental principle of the Rooker-Feldman doctrine [is] that a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings." Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dep't, 973 F.2d 169, 179 (3d Cir. 1992); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005) (explaining that "federal courts of first instance" lack jurisdiction to "review and reverse unfavorable state-court judgments"). The Rooker-Feldman doctrine "prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling." Desi's Pizza, Inc. v. City of Wilkes–Barre, 321 F.3d 411, 419 (3d Cir. 2003) (instructing that, under the Rooker–Feldman doctrine, party may not bring action in federal court complaining of injuries caused by state court judgment). Stated another way, "Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." Id. at 422. The doctrine is jurisdictional in nature, precluding further federal review. See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163 (3d Cir. 2010).

Construing the United States Supreme Court's related decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Court of Appeals for the Third Circuit has identified four Rooker–Feldman prerequisites. First, the federal plaintiff must be a state-court loser; the loss need not be total, but the plaintiff must have suffered some adverse result. Second, the plaintiff must reference injuries caused by the state-court judgment, as distinct from those

caused by, for example, the unconstitutionality of an underlying statute itself. Third, the state judgment must antedate the filing of the federal suit. And fourth, the plaintiff must essentially be inviting the federal court to review and reject the state-court judgments. See Great Western, 615 F.3d at 166. All four factors are present here.

Plaintiff is clearly challenging determinations previously made in the child custody proceedings before the Allegheny County Court of Common Pleas and is seeking a contrary determination in this Court that the State Court erred, *e.g.*, that it made incorrect factual and/or legal determinations, in entering its orders. This the Federal Court cannot do. Cf., *e.g.*, McAllister v. Allegheny County Family Div. 128 Fed. Appx. 901, 902, (3d Cir. 2005) (affirming jurisdictional bar to child custody litigation where District Court concluded issues presented were "inextricably intertwined" with state court adjudication); Bangura v. City of Philadelphia, 338 Fed. Appx. 261, 265 (3d Cir. 2009) (affirming Rooker-Feldman bar to claims arising from state court custody determinations).

### B. Abstention Under Younger Doctrine

Abstention under Younger is appropriate where certain state law proceedings are pending.[8] Three criteria must be met in order for a district court to abstain under Younger: (1) ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to present federal claims. See, *e.g.*, Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).[9]

---

[8] Cf. Yang v. Tsui, 416 F.3d 199 (3d Cir. 2005) (stating that Younger abstention is appropriate in certain child custody disputes).

[9] See also generally Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982).

This action clearly meets the first prong because the judicial proceedings regarding custody and rights pertaining to Plaintiff's minor son are "ongoing" as reflected in the record. See Brief in Support at 4-5 ("The state court proceeding includes: who should have legal and physical custody of the child; what visitation Plaintiff should be permitted; Plaintiff's compliance with a court ordered plan for custody; [and] Plaintiff's compliance with a court ordered plan for Plaintiff to provide a suitable home environment for the child"). Moreover, the discrete State Court Juvenile Court Division proceedings as to child custody are necessarily components of a comprehensive and fluid system in an area in which the State Juvenile Division of the Court of Common Pleas has a special expertise and experience and interest. Finally, the state proceedings clearly afford Plaintiff an adequate opportunity to raise the objections and complaints made in her Complaint *sub judice*, should she elect to participate in those proceedings in future. Cf. Juidice v. Vail, 430 U.S. 327 (1977) (stating that Younger requires only "an opportunity to present federal claims in a state proceeding").

    Thus, to the extent Plaintiff brings or intends claims or challenges related not to prior determinations but to child custody or right determinations made subsequent to the filing of this action and/or related to ongoing proceedings, this Court should avoid offending principles of comity, and abstain from exercising jurisdiction. See, *e.g.*, Dixon v. Kuhn, 257 Fed. Appx. 553, 555 (3d Cir. 2007) (affirming abstention from claims related to ongoing State Court child custody proceedings); McAllister,128 Fed. Appx. at 902 (affirming applicability of Younger abstention insofar as child-custody litigation remained on-going); Lazaridis v. Wehmer, 591 F.3d

---

  Younger abstention is not appropriate when "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist . . . ." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989). Neither of these exceptions applies here.

666, 670-671 (3d Cir. 2010) (finding elements of three-prong Younger abstention met with regard to state child custody determinations). Cf. Turetsky v. Turetsky, 402 Fed. Appx. 671, 673 (3d Cir. 2010).

## V.  CONCLUSION

Accordingly, for the above reasons, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 5) be granted on jurisdictional grounds.  The Court specifically concludes, based on the explication above, that the action is jurisdictionally barred under Rooker-Feldman and/or the Court should abstain from an exercise of jurisdiction under Younger, and any further leave to amend the *pro se* Complaint would be futile.  See Lazaridis v. Wehmer, 591 F.3d 666, 672 (3d Cir. 2010) (agreeing with District Court that it was unnecessary to provide plaintiff with opportunity to amend his complaint where Younger doctrine abstention applied to claims related to ongoing State child custody proceedings) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). See also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (dismissal of *pro se* civil rights claim without amendment where it would be futile).

Dated:  March 3, 2014

                                          /s/ Lisa Pupo Lenihan
                                          Lisa Pupo Lenihan
                                          Chief U.S. Magistrate Judge